**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

**v.**                                          **Criminal Action No. 1:05CR27-2**

**JUSTIN BOVELL**
                **Defendant.**

## REPORT AND RECOMMENDATION/OPINION

This matter has been referred to the undersigned Magistrate Judge by the District Court for

purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant,

Justin Bovell, in person and by counsel, Ernest Skaggs, appeared before me on May 29, 2007. The

Government appeared by Zelda E. Wesley, its Assistant United States Attorney.

Thereupon, the Court proceeded with the Rule 11 proceeding by first placing Defendant

under oath; inquiring of him as to his understanding of the requirements of one who is placed under

oath and the penalties that one could face if he testified falsely with respect to a material matter

while under oath; and asking Defendant's counsel what Defendant's anticipated plea would be.

Defendant's responses indicated he understood the requirement of the oath and his Counsel

responded that Defendant would enter a plea of "Guilty" to Count Three of the Indictment. The

Court then determined that Defendant's plea was pursuant to a written plea agreement, and asked

the Government to tender the original to the Court. The Court then asked counsel for the

Government to summarize the written Plea Agreement.

Defendant then stated that the Government's summary of the Plea Agreement was correct.

The Court **ORDERED** the written Plea Agreement filed.

Thereupon, the Court inquired of Defendant concerning his understanding of his right to

have an Article III Judge hear the entry of his guilty plea and his understanding of the difference

between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that he voluntarily waived his right to have an Article III Judge hear his plea and voluntarily consented to the undersigned Magistrate Judge hearing his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Justin Bovell, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court.

The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned then inquired of Defendant regarding his understanding of the written plea agreement. Defendant stated he understood the terms of the written plea agreement and also stated that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government other than those terms contained in the written plea agreement. The undersigned then reviewed with Defendant Count Three of the Indictment, the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in Count Three of the Indictment, the impact of the sentencing guidelines on sentencing in general, and

inquired of Defendant as to his competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against him and understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on that charge was imprisonment for a term of not more than twenty (20) years; understood the maximum fine that could be imposed was $1,000,000.00; understood that both fine and imprisonment could be imposed; understood he would be subject to a period of at least three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. He also understood he might be required by the Court to pay the costs of his incarceration and supervised release.

Defendant also understood that his actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that he understood, that the Sentencing Guidelines are no longer mandatory.

The undersigned Magistrate Judge further examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement dated May 9, 2007, and signed by him on May 18, 2007, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant.

The undersigned Magistrate Judge further inquired of Defendant, his counsel, and the Government as to the non-binding recommendations contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Three of the Indictment, the undersigned Magistrate Judge would write the subject Report and Recommendation

and tender the same to the District Court Judge, and the undersigned would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the subject Report and Recommendation, as well as the pre-sentence investigation report, would the District Court make a determination as to whether to accept or reject Defendant's plea of guilty or any recommendation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations contained in the written agreement.

The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, in the event the District Court Judge rejected Defendant's plea of guilty, Defendant would be permitted to withdraw his plea and proceed to trial. However, Defendant was further advised if the District Court Judge accepted his plea of guilty to the felony charge contained in Count Three of the Indictment, Defendant would not be permitted to withdraw his guilty plea even if the Judge refused to follow the non-binding recommendations contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected. Defendant and his counsel each acknowledged their understanding and Defendant maintained his desire to have his plea of guilty accepted.

The undersigned Magistrate Judge further examined Defendant with regard to his understanding of the impact of his conditional waiver of his appellate rights as contained in the written plea agreement, and determined he understood those rights and voluntarily gave them up pursuant to the condition stated in the written plea agreement.

The undersigned Magistrate Judge further cautioned and examined Defendant under oath concerning all matters mentioned in Rule 11.

The undersigned then reviewed with Defendant Count Three of the Indictment, including the elements the United States would have to prove at trial, charging him with aiding and abetting in the distribution of crack cocaine in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and Title 18, United States Code, Section 2.

The Court then received the sworn testimony of Joseph Antulock, who testified that he is an officer with the West Virginia State Police Bureau of Criminal Investigation. He was involved in an investigation of a group of individuals known to police as the "Philly Boys" involving the distribution of illegal drugs. One of the places the officers were investigating was the residence of John and Shasta Bell, co-defendants in the Indictment, in Monongalia County, West Virginia. On November 19, 2004, police utilized a confidential informant ("CI") to make a purchase of illegal drugs from the Bell residence. The CI went to the residence and met with Defendant and Lamar Stamp, who had arrived in a car driven by Defendant. They entered the residence. Defendant and Stamp left the room and were outside the CI's presence for a short time. Defendant then left the residence and returned to the car which he was driving. The deal took place inside the residence. Stamp then came out of the residence and got into the car that Defendant was driving. Shortly thereafter, police made a stop of the vehicle Defendant was driving. Stamp was still a passenger in the car. The "buy money" was recovered on Stamp.

The drugs were analyzed by the West Virginia State Police Laboratory, which confirmed them to consist of .68 grams of cocaine base.

The defendant stated he had heard, understood, and agreed with all the facts in Cpl. Antulock's testimony, except he stated that when he and Stamp left the CI and went into another room, he (Defendant) did not go into the bedroom with Stamp, but instead went to the bathroom.

He then left the residence. He testified that even though he did not go into the room with Stamp, he was aware of what was going on and did drive Stamp with that knowledge. Thereupon, Defendant, Justin Bovell, with the consent of his counsel, Ernest Skaggs, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in Count Three of the Indictment.

From the testimony of Cpl. Antulock, the undersigned Magistrate Judge concludes the offense charged in Count Three of the Indictment is supported by an independent basis in fact concerning each of the essential elements of such offense. This conclusion is supported by Defendant's under-oath in-court statement.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing his plea; Defendant understood the charges against him, not only as to the Indictment as a whole, but in particular as to Count Three of the Indictment; Defendant understood the consequences of his plea of guilty; Defendant made a knowing and voluntary plea; and Defendant's plea is supported by the testimony of Cpl. Antulock as well as Defendant's own under-oath statement.

The undersigned Magistrate Judge therefore **RECOMMENDS** Defendant's plea of guilty to the felony charge contained Count Three of the Indictment herein be accepted conditioned upon the Court's receipt and review of this Report and Recommendation and a Pre-Sentence Investigation Report, and that the Defendant be adjudged guilty on said charge as contained in Count Three of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

The undersigned then advised the parties that he would recommend sentencing in this matter be delayed until after November 1, 2007, pending further developments regarding the United States Sentencing Commission's promulgation of an amendment to the sentencing guidelines that would, if no action is taken by Congress, take effect on November 1, 2007.[1]  The undersigned advised

---

[1]

On April 27, 2007, the [United States Sentencing] Commission promulgated an amendment to USSG §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) to adjust the quantity thresholds for crack cocaine ("cocaine base") so that the base offense level for cocaine base, as determined by the Drug Quantity Table, will be reduced by two levels. The amendment results in the base offense level corresponding to a guideline range that includes the five-year and ten-year mandatory minimum term of imprisonment for five and 50 grams of crack cocaine, respectively. Prior to the amendment, at least five grams but less than 20 grams of cocaine base were assigned a base offense level of 26 (63 to 78 months at Criminal History Category I), and at least 50 grams but less than 150 grams of cocaine base were assigned a base offense level of 32 (121 to 151 months at Criminal History Category I). Pursuant to the amendment, those same quantities of cocaine base will be assigned a base offense level of 24 (51 to 63 months at Criminal History Category I) and 30 (97 to 121 months at Criminal History Category I), respectively.

The amendment also addresses how to determine the base offense level in a case involving cocaine base and other controlled substances. Prior to the amendment, there was a mathematical relationship among all drug types that was used to structure both the Drug Quantity Table and the Drug Equivalency Tables. As a result, the marihuana equivalencies set forth in Drug Equivalency Table could be used to determine the base offense level in any case involving differing controlled substances. By restructuring the Drug Quantity Table for cocaine base offenses only, the amendment will alter the mathematical relationship between cocaine base and other drug types to varying degrees throughout the Drug Quantity Table. The amendment, therefore provides an alternative method for determining the combined offense level in an offense involving cocaine base and other drugs.

The amendment, [] absent congressional action to the contrary, becomes effective November 1, 2007[.]

United States Sentencing Commission Report to the Congress: Cocaine and Federal Sentencing

Defendant , and the parties including Defendant expressed their understanding that this recommendation in no way guaranteed the amendment would become effective, and, even if it did, that the defendant would personally benefit from that amendment. By delaying sentencing until after November 1, 2007, however, Defendant may at least have the opportunity to benefit from any such changes that may be made to the sentencing guidelines.

The undersigned United States Magistrate Judge therefore respectfully recommends that sentencing in this matter be postponed until after November 1, 2007.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 29th day of May, 2007.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

Policy (May 2007).